FILED
CLERK, U.S. DISTRICT COURT

JUL 7 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   MAXIMO BERREONDO,             )    NO. CV 07-2445-VBF(E)
                                   )
12              Petitioner,        )
                                   )
13        v.                       )    ORDER ADOPTING FINDINGS,
                                   )
14   DERRAL G. ADAMS, Warden,      )    CONCLUSIONS AND RECOMMENDATIONS
                                   )
15              Respondent.        )    OF UNITED STATES MAGISTRATE JUDGE
                                   )
16   _____)

17

18        Pursuant to 28 U.S.C. § 636, the Court has reviewed the

19   Petition, all of the records herein and the attached Report and

20   Recommendation of United States Magistrate Judge.  The Court approves

21   and adopts the Magistrate Judge's Report and Recommendation.

22

23        IT IS ORDERED that Judgment be entered denying and dismissing

24   the Petition with prejudice.

25   ///

26   ///

27   ///

28   ///

1       IT IS FURTHER ORDERED that the Clerk serve copies of this

2   Order, the Magistrate Judge's Report and Recommendation and the

3   Judgment herein by United States mail on Petitioner and counsel for

4   Respondent.

5

6       LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8       DATED:  _____July 3, 2008_____, 2008.

9

10      _____

11           VALERIE BAKER FAIRBANK
            UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| MAXIMO BERREONDO, | ) | NO. CV 07-2445-VBF(E) |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION OF |
| | ) | |
| DERRAL G. ADAMS, Warden, | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| Respondent, | ) | |
| | ) | |
| _____ | ) | |

This Report and Recommendation is submitted to the Honorable Valerie Baker Fairbank, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on April 12, 2007, accompanied by an attached Memorandum ("Pet. Mem"). Respondent filed an Answer on July 17, 2007, asserting that Petitioner's claims were unexhausted, but acknowledging

that Respondent previously had indicated that the Petition was exhausted.[1]  On August 17, 2007, Petitioner filed a Response to the Answer.  On September 28, 2007, the Court issued an "Order Deeming Exhaustion Defense to be Waived," inter alia ordering Respondent to file a Supplemental Answer addressing the merits of Petitioner's claims.  On January 25, 2008, Respondent filed a Supplemental Answer. On February 29, 2008, Petitioner filed "Petitioner['']s Response to Respondent['']s Supplemental Answer to Petition for Writ of Habeas Corpus."

## BACKGROUND

A jury found Petitioner guilty of the premeditated first degree murder of Francisco Sanchez in violation of California Penal Code section 187 and possession of a firearm by a felon in violation of California Penal Code section 12021(a)(1) (Reporter's Transcript ["R.T."] 1325-28; Clerk's Transcript ["C.T."] 612-13, 615).  The jury found true the allegations that, with respect to the murder: (1) Petitioner personally and intentionally discharged a firearm which caused death to the victim within the meaning of California Penal Code section 12022.53(d); (2) Petitioner personally and intentionally discharged a firearm within the meaning of California Penal Code section 12022.53(c); (3) Petitioner personally used a firearm within the meaning of California Penal Code section 12022.53(b); and (4) the

---

[1]   See "Declaration of Stacy S. Schwartz in Support of Application for an Extension of Time," attached to "Respondent's Application for an Extension of Time to File Answer to Petition for Writ of Habeas Corpus," filed on June 11, 2007.

murder was committed for the benefit of, at the direction of, and in association with a criminal street gang, and with the specific intent to promote, further and assist in criminal conduct by gang members, within the meaning of California Penal Code section 186.22(b)(1) (R.T. 1325-28; C.T. 612, 615).

The court found true the allegations that Petitioner had suffered a prior felony carjacking conviction within the meaning of California Penal Code sections 667(a)(1) and 667.6(b), which qualified as a strike under California's "Three Strikes Law," California Penal Code sections 667(b) - (i) and 1170.12(a) - (d) (R.T. 1339-40; C.T. 199-203, 674).[2]  Pursuant to California Penal Code section 1170.12(c)(1), the court sentenced Petitioner on the murder charge to a term of twenty-five years to life, doubled pursuant to the Three Strikes Law, for a total term on the murder charge of fifty years to life (R.T. 1344-45).  The court enhanced the sentence by imposing a consecutive term of twenty-five years to life pursuant to California Penal Code section 12022.53(d) (R.T. 1344; C.T. 674).  The court stayed sentence on the other firearms enhancement allegations (R.T. 1345; C.T. 675).  The court imposed the mid-term of four years on the ex-felon in possession count, to run concurrently with sentence on the murder count (R.T. 1345-46; C.T. 675).  The court added to Petitioner's

---

[2]   The Three Strikes Law consists of two nearly identical statutory schemes.  The earlier provision, enacted by the Legislature, was passed as an urgency measure, and is codified as California Penal Code §§ 667(b) - (i) (eff. March 7, 1994).  The later provision, an initiative statute, is embodied in California Penal Code § 1170.12 (eff. Nov. 9, 1994).  See generally People v. Superior Court (Romero), 13 Cal. 4th 497, 504-05, 53 Cal. Rptr. 2d 789, 917 P.2d 628 (1996).

1  sentence a five-year enhancement pursuant to California Penal Code
2  section 667(a)(1), and imposed, but stayed, a one-year enhancement
3  under California Penal Code section 667.5(b) (R.T. 1347, 1350-51).
4  Petitioner received a total sentence of 80 years to life (R.T. 1344-
5  50; C.T. 674-78).

7      The Court of Appeal affirmed Petitioner's conviction, but ordered
8  the trial court to amend the abstract of judgment to reflect the
9  court's oral pronouncement of judgment (Respondent's Lodgment 4; <u>see</u>
10 <u>People v. Berreondo</u>, 2006 WL 710958 (Cal. Ct. App. Mar. 22, 2006)).
11 The California Supreme Court denied Petitioner's petition for review
12 without opinion (Respondent's Lodgment 6).

14                        **SUMMARY OF TRIAL EVIDENCE**

16     The following factual summary is taken from the opinion of the
17 California Court of Appeal in <u>People v. Berreondo</u>, 2006 WL 710958
18 (Cal. Ct. App. Mar. 22, 2006).  <u>See Galvan v. Alaska Dep't of</u>
19 <u>Corrections</u>, 397 F.3d 1198, 1199 & n.1 (9th Cir. 2005) (taking factual
20 summary from state appellate decision).

22        Defendant is a member of the Clover street gang.  In
23        early January 2002, several Clover gang members were killed
24        by members of the Lincoln Heights gang.  To retaliate,
25        defendant and another Clover gang member, identified only as
26        "Sporty," murdered Francisco Sanchez, a member of the
27        Lincoln Heights gang.  The murder occurred on January 3,
28        2002, at 4:30 p.m. in broad daylight.  Defendant approached

1    Sanchez on the street and shot him twice.  After defendant's

2    gun jammed, defendant repeatedly hit Sanchez on the head

3    with the firearm.  Sporty then shot Sanchez several more

4    times. Three individuals witnessed the murder: Milton Perez,

5    Esteban Espinoza, and Elizabeth Pena.  Perez and Espinoza

6    testified at trial and identified defendant.  Pena's

7    testimony from a prior proceeding in which she had

8    identified defendant was introduced at trial.

9

10       Expert testimony was presented to establish that the

11    murder was committed for the benefit of the Clover street

12    gang.

13

14    No defense evidence was presented.

15

16  (Respondent's Lodgment 4, p. 3; <u>People v. Berreondo</u>, 2006 WL 710958,

17  at *1).

18

19                **PETITIONER'S CONTENTIONS**

20

21    Petitioner contends:

22

23    1.  The trial court assertedly erred in finding that the

24  prosecution had exercised "due diligence" to locate witness Elizabeth

25  Pena, and in permitting the prosecution to introduce Pena's hearsay

26  testimony from Petitioner's first trial, allegedly in violation of

27  Petitioner's constitutional rights (Petition, Ground One);

28  ///

5

2.   The trial court allegedly violated the Constitution by refusing to sever the felon-in-possession charge from the murder charge (Petition, Ground Two);

3.   The trial court's imposition of enhanced punishment pursuant to California Penal Code section 12022.53(d) allegedly violated state law principles of "merger" and California Penal Code section 654 (Petition, Ground Three); and

4.   Petitioner's jury waiver on the prior conviction allegations allegedly was tendered under California law which assertedly violates the Constitution by limiting a defendant's jury trial right on such allegations (Petition, Ground Four).

**STANDARD OF REVIEW**

A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (as amended); see also Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

1   "Clearly established Federal law" refers to the governing legal

2   principle or principles set forth by the Supreme Court at the time the

3   state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63

4   (2003).  A state court's decision is "contrary to" clearly established

5   Federal law if: (1) it applies a rule that contradicts governing

6   Supreme Court law; or (2) it "confronts a set of facts . . .

7   materially indistinguishable" from a decision of the Supreme Court but

8   reaches a different result.  See Early v. Packer, 537 U.S. at 8

9   (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

10

11      Under the "unreasonable application prong" of section 2254(d)(1),

12  a federal court may grant habeas relief "based on the application of a

13  governing legal principle to a set of facts different from those of

14  the case in which the principle was announced."  Lockyer v. Andrade,

15  538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

16  U.S. at 24-26 (state court decision "involves an unreasonable

17  application" of clearly established federal law if it identifies the

18  correct governing Supreme Court law but unreasonably applies the law

19  to the facts).

20

21      A state court's decision "involves an unreasonable application of

22  [Supreme Court] precedent if the state court either unreasonably

23  extends a legal principle from [Supreme Court] precedent to a new

24  context where it should not apply, or unreasonably refuses to extend

25  that principle to a new context where it should apply."  Williams v.

26  Taylor, 529 U.S. at 407 (citation omitted).

27  ///

28  ///

7

1    "In order for a federal court to find a state court's application

2   of [Supreme Court] precedent 'unreasonable,' the state court's

3   decision must have been more than incorrect or erroneous."  Wiggins v.

4   Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

5   court's application must have been 'objectively unreasonable.'"  Id.

6   at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062,

7   1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003).

8

9    In applying these standards, this Court looks to the last

10  reasoned state court decision.  See Franklin v. Johnson, 290 F.3d

11  1223, 1233 n.3 (9th Cir. 2002).  Where no such reasoned opinion

12  exists, as where a state court rejected a claim in an unreasoned

13  order, this Court must conduct an independent review to determine

14  whether the decisions were contrary to, or involved an unreasonable

15  application of, "clearly established" Supreme Court precedent.  See

16  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

17

18                          DISCUSSION

19

20  I.   The Admission of Elizabeth Pena's Prior Testimony Does Not Merit

21       Habeas Relief.

22

23       A.   Background

24

25    California's hearsay rule does not exclude evidence of former

26  testimony if the witness is unavailable and the party against whom the

27  former testimony is offered was a party to the prior proceeding and

28  had the right and opportunity to cross-examine the witness with an

8

1 | interest and motive similar to that which that party has at the
2 | present hearing.  Cal. Evid. Code § 1291(a)(2).  California Evidence
3 | Code section 240 defines the term "unavailable as a witness" to
4 | include a situation in which the declarant is absent from the hearing
5 | and the proponent of the witness' statement "has exercised due
6 | diligence but has been unable to procure his or her attendance by the
7 | court's process."  Cal. Evid. Code § 240(a)(5).

9 | Prosecution witness Elizabeth Pena testified at Petitioner's
10 | first trial, which ended in a mistrial on March 3, 2004 (Augmented
11 | Reporter's Transcript ["Aug. R.T."] 171-301; R.T. A-22; C.T. 332-34,
12 | 402-03).  Prior to Pena's testimony at the first trial, the prosecutor
13 | told the court that Pena had "assured" the prosecutor that Pena would
14 | be in court (Aug. R.T. 110).  The court ordered Pena on call, and Pena
15 | indicated her understanding that she would be on call (Aug. R.T. 110).
16 | Although Pena expressed reluctance to testify, Pena appeared and
17 | testified at length at the first trial (Aug. R.T. 169, 171-301).

19 | Jury selection in the retrial commenced on October 25, 2004 (C.T.
20 | 418).  Opening statements in the retrial began on November 1, 2004
21 | (C.T. 424; R.T. 204).  On November 8, 2004, prior to calling Pena, the
22 | prosecutor told the court that the prosecution had not been able to
23 | locate Pena (R.T. 478).  The prosecutor said that the investigating
24 | officer and a district attorney investigator had been in "constant
25 | contact" with Pena's family, that Pena was "fully aware of her
26 | subpoenas . . . [and] of her responsibility to be in court," and that
27 | Pena was refusing to co-operate (R.T. 478).  The prosecutor said
28 | investigators had been told Pena was "terrified" and did not want to

1  testify (R.T. 479).  The prosecutor requested a "due diligence

2  hearing" to permit the admission of Pena's prior testimony (R.T. 479).

3  Petitioner's counsel also requested a hearing (R.T. 480-81).

4

5      The court held the hearing the next day (R.T. 575).  Glen

6  Bancroft, a senior investigator with the district attorney's office,

7  testified that, on October 27 or 28, 2004, he was assigned the task of

8  serving Pena with a subpoena to testify (R.T. 577).  That day Bancroft

9  allegedly began attempting to locate Pena (R.T. 583).

10

11     Bancroft said his partner, Sal Nares, told Bancroft what Nares

12  had done in the past to locate Pena, and explained to Bancroft the

13  difficulty Nares had encountered in attempting to locate Pena (R.T.

14  588).  Bancroft said he obtained from Detective Juarez the address of

15  Pena's sister in Downey, with whom Pena assertedly sometimes stayed,

16  but no one was home at that address (R.T. 578).  A neighbor allegedly

17  told Bancroft that Pena drove a black Honda, and was at that address

18  "once in awhile," normally on Friday or Saturday night, but that the

19  neighbor had not seen Pena for quite a while (R.T. 579).  Bancroft

20  testified he left the subpoena, and a business card with a note saying

21  Bancroft wanted to talk to Pena, in the door of the residence (R.T.

22  579).

23

24     Bancroft assertedly returned on November 3 and left another

25  subpoena, card and note (R.T. 579).  That night, Pena's brother-in-law

26  allegedly called Bancroft and said that Pena was aware that Bancroft

27  wanted to talk to her and that she knew "that it was a subpoena," but

28  that she allegedly was avoiding Bancroft (R.T. 579).  The brother-in-

1 law allegedly told Bancroft that Pena "was afraid for her life,
2 basically" (R.T. 579-80).  According to Bancroft, the brother-in-law
3 would not tell Bancroft Pena's whereabouts, but said Pena came to the
4 Downey address on Friday or Saturday nights (R.T. 580).

6     The following Saturday evening, November 6, 2004, Bancroft
7 allegedly went to the Downey residence, but no one answered the door
8 (R.T. 580-81).  Bancroft testified no one answered the neighbor's door
9 either (R.T. 580).  Bancroft said he left another note (R.T. 580).

11     Bancroft testified he also went to a Los Angeles address and a
12 Covina address given to him by law enforcement, but no one at the Los
13 Angeles address knew Pena, and a person at the Covina address said she
14 had not seen Pena for quite some time (R.T. 581).  Bancroft assertedly
15 drove around looking for a black Honda, but found nothing (R.T. 581).
16 Bancroft reportedly checked the jails without success (R.T. 582-83).
17 Bancroft allegedly then spoke to the brother-in-law again, telling him
18 that Bancroft would pick Pena up and bring her to court, but the
19 brother-in-law assertedly said Pena did not want to come to court
20 (R.T. 581-82).

22     Bancroft testified that Detective Juarez did not tell Bancroft
23 where Pena's children went to school (R.T. 583-84).  Bancroft admitted
24 that he did not visit the address on Pena's car registration or
25 determine whether Pena had caused her mail to be forwarded elsewhere
26 from the Downey address (R.T. 584-86).  However, Pena's driving record
27 showed Pena living at the Downey address (R.T. 591).  Bancroft
28 assertedly did not do a "computer run" to determine whether Pena was

1   receiving financial assistance (R.T. 585).

2

3       Detective Cynthia Juarez testified that Juarez had difficulty

4   locating Pena for the first trial, but eventually did so at the Covina

5   address (R.T. 594). Juarez said Pena moved from the Covina address to

6   temporary lodging funded by the district attorney's office in February

7   of 2004 (R.T. 594-95). According to Juarez, in March or April of 2004

8   Pena moved to the Downey address (R.T. 595).

9

10      Since February of 2004, Juarez allegedly had spoken with Pena

11  approximately once a month, providing Pena with a monthly food

12  allowance (R.T. 596). Juarez said that Pena understood she would be

13  called back to court, and that, although Pena expressed reluctance to

14  testify, Pena never told Juarez that Pena would hide (R.T. 596).

15

16      Juarez said she last spoke to Pena in the first part of

17  September, 2004, when Pena was living at the Downey address (R.T. 597-

18  99). Juarez allegedly gave Pena the last installment of relocation

19  money (R.T. 604-05). According to Juarez, Pena expressed fear, but

20  did not indicate Pena refused to come to court (R.T. 598). Juarez

21  allegedly did not think there would be a problem contacting Pena (R.T.

22  605). Juarez said Pena previously had obeyed all orders to come to

23  court, and had complied with Juarez' previous requests for interviews,

24  despite assertedly expressing fear of testifying (R.T. 610).

25

26      Approximately a week later, Pena allegedly told Juarez that Pena

27  had moved, and provided a copy of a lease in the name of another of

28  Pena's sisters, which did not contain the property's address (R.T.

599-600, 606, 609). Pena allegedly did not provide the address or the sister's contact information (R.T. 599-600). Juarez admitted she did not attempt to locate that sister (R.T. 607). In October, prior to the time Bancroft was assigned to locate Pena, Juarez assertedly went to the Downey address approximately three times, and spoke with Pena's sister there (R.T. 600-01). The sister allegedly said Pena was very upset, afraid to testify, did not want to come to court, and was refusing to co-operate (R.T. 601). The sister allegedly refused to disclose Pena's whereabouts, but said Pena's children were living with one of Pena's sisters (R.T. 601). Juarez testified that Pena's family did not co-operate with Juarez in efforts to locate Pena (R.T. 611).

The trial court ruled that the prosecution had shown due diligence in attempting to locate Pena (R.T. 620-23). Portions of Pena's testimony at the first trial were read to the jury (R.T. 636-735).

**B.   Discussion**

Petitioner claims that the trial court erred in finding that the prosecution had exercised due diligence in attempting to locate Pena (Pet. Mem., pp. 1-8).[3] The Court of Appeal held that the prosecution had shown the requisite due diligence, observing, _inter alia_, that Juarez had maintained consistent contact with Pena and reasonably believed that Pena would come to court, and that, when Juarez lost

---

[3]   Although the Memorandum attached to the Petition does not bear page numbers, the Court has provided page numbers for convenience.

13

1 contact with Pena, Bancroft "followed-up all leads in an effort to

2 find Pena" (Respondent's Lodgment 4, p. 10; People v. Berreondo, 2006

3 WL 710958, at *5).  The Court of Appeal rejected Petitioner's argument

4 that the efforts to find Pena were tardy, noting that the trial was

5 continued a number of times, twice after Juarez last met with Pena in

6 September (Respondent's Lodgment 4, p. 11; People v. Berreondo, 2006

7 WL 710958, at *5).  The Court of Appeal also found it significant that

8 Pena purposefully made herself unavailable (Respondent's Lodgment 4,

9 p. 11; People v. Berreondo, 2006 WL 710958, at *5).

10

11      In Crawford v. Washington, 541 U.S. 36 (2004) ("Crawford"), the

12 United States Supreme Court held that out-of-court testimonial

13 statements are inadmissible unless the witness is unavailable to

14 testify and the defendant had a prior opportunity for cross-

15 examination.[4]  Neither party denies that Pena's prior testimony was

16 "testimonial" hearsay within the meaning of Crawford.  Petitioner does

17 not deny that he had the opportunity to cross-examine Pena during the

18 first trial; indeed, the transcript of the cross-examination of Pena

19 by Petitioner's counsel in the first trial consumes over fifty pages

20 of the Reporter's Transcript (see R.T. 230-79, 297-301).  Petitioner's

21 sole contention is that the trial court erred in concluding that Pena

22 was unavailable based on a finding that the prosecution exercised due

23 diligence in attempting to locate Pena.

24 _____

25      [4]    Crawford overruled Ohio v. Roberts, 448 U.S. 56, 66
   (1980), to the extent that Ohio v. Roberts held constitutional
26 the admission of an out-of-court statement not falling within a
   "firmly rooted" hearsay exception if the statement otherwise bore
27 "particularized guarantees of trustworthiness."  See Crawford v.
   Washington, 541 U.S. at 61-65.  Crawford was decided on March 8,
28 2004, prior to Petitioner's retrial.

1    "The constitutional requirement that a witness be 'unavailable'
2  stands on separate footing that is independent of and in addition to
3  the requirement of a prior opportunity for cross-examination." United
4  States v. Yida, 498 F.3d 945, 950 (9th Cir. 2007) (citations omitted).
5  A witness is not "unavailable" for purposes of the hearsay exception
6  for former testimony "unless the prosecutorial authorities have made a
7  good-faith effort to obtain [the witness'] presence at trial." Barber
8  v. Page, 390 U.S. 719, 724-25 (1968); Windham v. Merkle, 163 F.3d
9  1092, 1102 (9th Cir. 1998); People v. Smith, 30 Cal. 4th 581, 609, 134
10  Cal. Rptr. 2d 1, 68 P.3d 302 (2003), cert. denied, 540 U.S. 1163
11  (2004) (noting good faith requirement of Barber v. Page is "similar"
12  to due diligence requirement of California Evidence Code section
13  240(a)(5)); People v. Pike, 71 Cal. 2d 595, 609, 78 Cal. Rptr. 672,
14  455 P.2d 776 (1969), cert. denied, 406 U.S. 971 (1972) (Barber v. Page
15  did not afford defendant any greater rights than he had under
16  California law); People v. Forgason, 99 Cal. App. 3d 356, 362, 160
17  Cal. Rptr. 263 (1979) (equating good faith requirement of Barber v.
18  Page with California's due diligence requirement).  The prosecution
19  must make such good faith efforts to locate a witness prior to trial.
20  See Jackson v. Brown, 513 F.3d 1057, 1084 (9th Cir. 2008).

21

22    Here, the Court of Appeal reasonably determined that the
23  prosecution exercised due diligence in attempting to locate Pena.
24  Pena testified at the first trial despite expressing a fear of coming
25  to court.  She assured Detective Juarez that she, Pena, would appear
26  to testify at the retrial.  Juarez stayed in contact with Pena for a
27  time, and after Juarez finally lost contact with Pena in September,
28  Juarez made several attempts to contact Pena before Bancroft became

involved, attempting without success to elicit the cooperation of Pena's family.[5]  Thereafter, Bancroft mounted a reasonable effort to locate Pena, contacting Pena's family, leaving subpoenas and notes, and visiting several addresses on a number of occasions.  Under these circumstances, the Court of Appeal reasonably determined that Pena was "unavailable" so as to render her prior testimony admissible.  See Jackson v. Brown, 513 F.3d at 1083-84 (good faith shown where, after investigator served witness with notice to appear, trial was continued; investigator then lost touch with witness after witness' release from custody; investigator thereafter checked to see if witness had been arrested under any of her aliases, contacted witness' friend and learned witness had been working as a prostitute, and visited witness' "corner" several times but was unable to locate her); Windham v. Merkle, 163 F.3d at 1102-03 (good faith effort to locate witness shown, where subpoenaed witness told prosecutor that witness would appear at trial; thereafter, district attorney's office made three unsuccessful attempts to contact witness by telephone, contacted witness' parole officer, had a bench warrant issued for witness' arrest, searched for witness at his home, his parents' home and other places, and checked to see if witness was an accident casualty).  Hence, Petitioner has not shown that the admission of Pena's prior

---

[5]     Thus, contrary to Petitioner's assertion, the prosecution did not delay attempting to subpoena Pena until "the day of trial" (see Pet. Mem., p. 6).

1    testimony violated Petitioner's constitutional rights.[6]

2

3        It follows that the Court of Appeal's rejection of this claim was

4    not contrary to, or an objectively unreasonable application of, any

5    clearly established Federal law as determined by the United States

6    Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled

7    to habeas relief on Ground One of the Petition.

8

9    II.  **The Trial Court's Failure to Sever the Felon-in-Possession Charge**

10        **from the Murder Charge Does Not Merit Habeas Relief.**

11

12        A.    **Background**

13

14        Article I, section 28 of the California Constitution provides:

15    "When a prior felony conviction is an element of any felony offense,

16    it shall be proven to the trier of fact in open court."  Although a

17    jury is not entitled to learn the nature of the prior conviction, the

18    _____

19        [6]    In Petitioner's Response to the Supplemental Answer,
     Petitioner contends the prosecution had an incentive not to
20    locate Pena because, had Pena been located, she would have
     invoked her Fifth Amendment privilege not to testify
21    ("Petitioner['s] Response to Respondent['s] Supplemental Answer,
     etc.," p. 7).  It does not appear this contention is exhausted
22    (see Respondent's Lodgment 5).  However, the Court may deny an
     unexhausted claim on the merits which is not "colorable."  See
23    Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005), cert.
     denied, 546 U.S. 1172 (2006); 28 U.S.C. § 2254(b)(2).  This
24    contention manifestly is not "colorable."  Pena's invocation of
     her Fifth Amendment privilege not to testify would have rendered
25    Pena an "unavailable" witness so as to permit the admission of
     her prior testimony.  See California v. Green, 399 U.S. 149, 168
26    n.17 (1970); Padilla v. Terhune, 309 F.3d 614, 618 (9th Cir.
     2002); People v. Cudjo, 6 Cal. 4th 585, 607, 25 Cal. Rptr. 2d
27    390, 863 P.2d 635 (1993), cert. denied, 513 U.S. 850 (1994); Cal.
     Evid. Code § 240(a)(1).
28

                                    17

1  jury "must be advised that defendant is an ex-felon where that is an
2  element of a current charge." People v. Cunningham, 25 Cal. 4th 926,
3  984, 108 Cal. Rptr. 2d 291, 25 P.3d 519 (2001), cert. denied, 534 U.S.
4  1141 (2002) (quoting People v. Valentine, 42 Cal. 3d 170, 173, 228
5  Cal. Rptr. 25, 720 P.2d 913 (1986); citations and internal quotations
6  omitted).  To prove a violation of California Penal Code section
7  12021(a), the prosecution was required to prove: (1) conviction of a
8  felony; and (2) ownership, possession, custody or control of a
9  firearm.  People v. Jeffers, 41 Cal. App. 4th 917, 922, 49 Cal. Rptr.
10 2d 86 (1996).  As indicated above, Petitioner was charged with both
11 murder and possession of a firearm by an ex-felon in violation of
12 California Penal Code section 12021(a), based upon Petitioner's
13 alleged possession of the gun used to kill Sanchez.
14
15      Prior to the first trial, Petitioner's counsel moved to sever the
16 murder count from the count alleging possession of a firearm by an ex-
17 felon (Augmented Reporter's Transcript of Proceedings on February 20
18 and 27, 2003 ["Feb. 2003 Aug. R.T."] 10).  The court denied the motion
19 (Feb. 2003 Aug. R.T. 17; C.T. 246).  After the case was dismissed and
20 refiled, Petitioner's counsel again moved to sever the two counts
21 (Aug. R.T. 44; C.T. 281-87).  On January 21, 2004, the court denied
22 the motion, ruling that: (1) the offenses were of the same class;
23 (2) there was no showing of weak evidence supporting one of the
24 charges as compared to the other; (3) neither offense was particularly
25 inflammatory when compared with the other; and (4) the evidence was
26 cross-admissible (Aug. R.T. 85; C.T. 326).  Thereafter, Petitioner
27 stipulated that he suffered the alleged prior conviction for the
28 limited purpose of not allowing the jury to hear the nature of the

18

1  prior conviction (Aug. R.T. 104).  At trial, the court instructed the

2  jury that Petitioner's prior felony conviction had been "established

3  by stipulation" so that "no further proof of that fact is required,"

4  and that the jury "must accept as true[] the existence of this

5  previous felony conviction" (R.T. 1148; C.T. 585).  In closing

6  argument, the prosecutor told the jury that it had been stipulated

7  that Petitioner was a felon, "so you don't have to worry about that

8  and don't consider it for any purpose except that element has been

9  met" (R.T. 1215).

10

11      Petitioner contends the trial court erred in refusing to sever

12  the murder count from the ex-felon in possession count.  The Court of

13  Appeal rejected this contention (Respondent's Lodgment 4, p. 14-15;

14  People v. Berreondo, 2006 WL 710958, at *8).  The Court of Appeal

15  found "instructive" the case of People v. Gomez, 24 Cal. App. 4th 22,

16  29 Cal. Rptr. 2d 94 (1994) ("Gomez") (upholding joinder of a robbery

17  charge with an ex-felon in possession charge) (Respondent's Lodgment

18  4, pp. 14-15; People v. Berreondo, 2006 WL 710958, at *8).  The Court

19  of Appeal adopted the Gomez Court's conclusions that whether there was

20  a gun possessed and whether the defendant was the person with the gun

21  were "equal issues" in the case, and that the defendant's status as a

22  felon would "not be determinative of either issue as a result of any

23  inflammatory nature of that information or any carryover effect on the

24  [murder] charge" (Respondent's Lodgment 4, pp. 14-15; People v.

25  Berreondo, 2006 WL 710958, at *8) (citation and internal quotations

26  omitted; original brackets).

27  ///

28  ///

19

**B.   Discussion**

"Improper joinder does not, in itself, violate the Constitution."
United States v. Lane, 474 U.S. 438, 446 n.8 (1986).  Misjoinder
violates the Constitution only where it results in prejudice so great
as to deny a defendant his right to a fair trial.  Id.; see also Davis
v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004), cert. dismissed, 545
U.S. 1165 (2005) (habeas relief unavailable unless joinder "actually
render[ed] petitioner's state trial fundamentally unfair"); Sandoval
v. Calderon, 241 F.3d 765, 771-72 (9th Cir. 2000), cert. denied, 534
U.S. 847 (2001) and 534 U.S. 943 (2001) (same).  "This prejudice is
shown if the impermissible joinder had a substantial and injurious
effect or influence in determining the jury's verdict."  Sandoval v.
Calderon, 241 F.3d at 772 (citation omitted).

Undue prejudice sometimes can arise when "joinder of counts
allows evidence of other crimes to be introduced in a trial where the
evidence would otherwise be inadmissible," or when a "strong
evidentiary case" is joined with a "weaker one."  Id. at 771-72.
Petitioner "bears the burden to prove unfairness rising to the level
of a due process concern."  Park v. State of California, 202 F.3d
1146, 1149 (9th Cir.), cert. denied, 531 U.S. 918 (2000) (citation
omitted).

Here, the evidence concerning Petitioner's possession and use of
the gun was cross-admissible to show both that Petitioner committed
the murder and that he possessed the gun.  See People v. Cunningham,
25 Cal. 4th at 985; People v. Gomez, 24 Cal. App. 4th at 27-28.

Cross-admissibility "significantly reduces the potential prejudice" to the defendant.  See Comer v. Schriro, 480 F.3d 960, 985 (9th Cir.), cert. denied, 127 S. Ct. 2455 (2007) (citations omitted). Additionally, joinder of the two charges did not link a weak case to a strong one.  Petitioner's principal defense was mistaken identity, and the issue of identity was equally central to both counts.  Either Petitioner shot Sanchez with the gun or he did not.

Evidence of Petitioner's prior conviction, however, was not cross-admissible,[7] and it is this evidence Petitioner contends prejudiced the jury.  Petitioner argues that this evidence allowed the prosecutor to "dirty up petitioner in the eyes of the jury as a convicted felon therefore probably guilty of the current murder" (Pet. Mem., p. 10).

To show prejudice from joinder of an allegedly inflammatory count, Petitioner must show the jury was "actually inflamed."  Park v. State of California, 202 F.3d at 1150.  Petitioner has not made any such showing.  The jury did not learn the nature of the prior conviction.  Moreover, as indicated above, the prosecutor argued that the jury should not consider Petitioner's status as an ex-felon for any purpose except to establish the elements of the ex-felon in

---

[7]    The prosecution likely could have used the prior carjacking conviction to impeach Petitioner had he testified. See Cal. Const., Art. I, section 28(f); People v. Collins, 42 Cal. 3d 378, 395, 228 Cal. Rptr. 899, 722 P.2d 173 (1986) (defendant may be impeached with prior conviction for robbery, a crime of moral turpitude); see generally People v. Castro, 38 Cal. 3d 301, 211 Cal. Rptr. 719, 696 P.2d 111 (1985).  However, Petitioner did not testify.

1  possession offense (R.T. 1215).  This argument further diminished the

2  chances that the jury would use the fact of the prior conviction as

3  evidence on the murder charge (R.T. 1215).

4

5      Additionally, the jury heard evidence that Petitioner shot and

6  killed a gang member in another incident (R.T. 329),[8] and that

7  Petitioner was a "big gun or a shot caller" for his gang (R.T. 727-

8  28).[9]  In light of this more inflammatory evidence, the stipulation

9  that Petitioner suffered a prior, unspecified felony conviction was

10  not significantly prejudicial.  The trial court's instruction to the

11  jury to decide each count separately (R.T. 1150; C.T. 588) also

12  militates against any finding of prejudice.  See Davis v. Woodford,

13  384 F.3d at 628.  The jury is presumed to have followed the court's

14  instructions.  See Weeks v. Angelone, 528 U.S. 225, 226 (2000).

15

16      In sum, the trial court's refusal to sever the murder charge from

17  the ex-felon in possession charge did not render Petitioner's trial

18  fundamentally unfair.  See Comer v. Schriro, 480 F.3d at 986; Davis v.

19  Woodford, 384 F.3d at 638-39; Fields v. Woodford, 309 F.3d 1095, 1109-

20  10 (9th Cir. 2002), amended on other grounds, 315 F.3d 1062 (9th Cir.

21  2002); see also Davis v. Coyle, 475 F.3d 761, 778 (6th Cir. 2007)

22  _____

23      [8]   Milton Perez testified that Petitioner told Perez that
Petitioner had been in a "shoot-out" and had shot someone,
24  allegedly in self-defense (R.T. 329-30).  Perez said that, as far
as he knew, no charges were brought against Petitioner regarding
25  that incident (R.T. 329-30).

26      [9]   In Pena's testimony from the first trial, read to the
jury in the second trial, Pena acknowledged telling a detective
27  that Petitioner was a "big gun or shot caller," but she denied at
the first trial that Petitioner was anything more than an "active
28  member" of the gang (R.T. 728).

1 (joinder of murder charge with charge of possession of a weapon by an

2 ex-felon not prejudicial; <u>United States v. Cardwell</u>, 433 F.3d 378, 388

3 (4th Cir. 2005), <u>cert. denied</u>, 547 U.S. 1061 (2006) (same; noting that

4 court instructed jury to consider each count separately, and that, due

5 to defendant's stipulation to existence of prior felony, jury did not

6 learn facts concerning that felony).

7

8     In any event, there is no clearly established Supreme Court law

9 that jury consideration of propensity evidence is error of

10 constitutional dimension.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. at 75 n.5

11 ("we express no opinion on whether a state law would violate the Due

12 Process Clause if it permitted the use of 'prior crimes' evidence to

13 show propensity to commit a charged crime"); <u>Larson v. Palmateer</u>, 515

14 F.3d 1057, 1066 (9th Cir. 2008) (because Supreme Court in <u>Estelle v.</u>

15 <u>McGuire</u> "expressly left this issue an open question," state court did

16 not unreasonably apply any clearly established federal law by

17 upholding the admission of petitioner's criminal history as against

18 due process challenge) (citation omitted).  Accordingly, this Court

19 could not grant habeas relief under the AEDPA standard of review even

20 if the state court's joinder of counts erroneously permitted the jury

21 to consider Petitioner's prior conviction as evidence of criminal

22 propensity.

23

24     For the foregoing reasons, the Court of Appeal's rejection of

25 Petitioner's claim was not contrary to, or an objectively unreasonable

26 application of, any clearly established Federal law as determined by

27 the United States Supreme Court.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner

28 is not entitled to habeas relief on Ground Two of the Petition.

III. **Petitioner's Challenge to the Penal Code Section 12022.53(d)**
     **Enhancement Does Not Merit Habeas Relief.**

As indicated above, the sentencing court imposed a consecutive term of twenty-five years to life as a sentence enhancement pursuant to California Penal Code section 12022.53(d), based on the jury's finding that Petitioner had personally intentionally discharged a firearm proximately causing death.  Petitioner alleges that, because the "predicate facts/elements" of the murder charge assertedly "necessarily included" the intentional discharge of a firearm proximately causing the victim's death, the "merger doctrine" announced in People v. Ireland, 70 Cal. 2d 522, 75 Cal. Rptr. 188, 450 P.2d 580 (1969) ("_Ireland_"), and the proscription against multiple punishments for the same acts set forth in California Penal Code section 654,[10] precluded the court from punishing Petitioner both for the murder and for the section 12022.53(d) enhancement (Pet. Mem., p. 11).

Federal habeas corpus relief may be granted "only on the ground that [Petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Mere errors in the application of state law are not cognizable on habeas

_____

[10]     California Penal Code section 654(a) provides, in pertinent part, that an "act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Section 654 "protects against multiple punishment, not multiple conviction."  People v. Harrison, 48 Cal. 3d 321, 335, 256 Cal. Rptr. 401, 768 P.2d 1078 (1989) (citation omitted).

24

corpus.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Matters relating to sentencing and serving of a sentence generally are governed by state law and do not raise a federal constitutional question.  See Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (holding that question of whether particular prior conviction qualifies for sentence enhancement under California law is not cognizable on federal habeas corpus); see also Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986) (federal habeas relief "unavailable for alleged error in the interpretation or application of state law"); Sturm v. California Adult Authority, 395 F.2d 446, 448 (9th Cir. 1967), cert. denied, 395 U.S. 947 (1969) ("a state court's interpretation of its [sentencing] statute does not raise a federal question").  "[S]tate courts are the ultimate expositors of state law."  Mullaney v. Wilbur, 421 U.S. 684, 691 (1975); see also Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert. denied, 493 U.S. 942 (1989).

Under narrow circumstances, however, the misapplication of state sentencing law may violate due process.  See Richmond v. Lewis, 506 U.S. 40, 50 (1992).  "[T]he federal, constitutional question is whether [the error] is so arbitrary or capricious as to constitute an independent due process" violation.  Id. (internal quotation and citation omitted); see also Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.").

///

///

1    Here, the sentencing court did not commit any state law error,

2  much less any Due Process violation.  As the Court of Appeal held (see

3  Respondent's Lodgment 4, pp. 16-17; People v. Berreondo, 2006 WL

4  710958, at *8-9), under California law, neither California's "merger

5  doctrine" nor California Penal Code section 654 prevent the imposition

6  of a section 12022.53(d) enhancement in a murder case.  In Ireland,

7  the California Supreme Court held that the felony-murder rule could

8  not be applied where it was based on an assault, which was an

9  "integral part" of, and hence merged with, the homicide.  Ireland, 70

10  Cal. 2d at 539.  However, the Ireland merger doctrine does not apply

11  to sentence enhancements.  See People v. Sanders, 111 Cal. App. 4th

12  1371, 4 Cal. Rptr. 3d 676 (2003) (merger doctrine did not bar sentence

13  for both murder conviction and section 12022.53(d) enhancement).

14  Moreover, California Penal Code section 654 does not preclude the

15  imposition of punishment for both murder and a section 12022.53(d)

16  enhancement.  See People v. Palacios, 41 Cal. 4th 720, 725-33, 62 Cal.

17  Rptr. 3d 145, 161 P.3d 519 (2007); People v. Sanders, 111 Cal. App.

18  4th at 1375; People v. Hutchins, 90 Cal. App. 4th 1308, 1313-14, 109

19  Cal. Rptr. 2d 643 (2001).

20

21    For the foregoing reasons, the Court of Appeal's rejection of

22  this claim was not contrary to, or an objectively unreasonable

23  application of, any clearly established Federal law as determined by

24  the United States Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner

25  is not entitled to habeas relief on Ground Three of the Petition.

26  ///

27  ///

28  ///

26

IV.   **Petitioner's Claim that His Waiver of Jury Trial on the Prior**

     **Conviction Allegations Was Tendered Under Allegedly**

     **Unconstitutional California Law Does Not Merit Habeas Relief.**

In California, a defendant enjoys a limited statutory right to a jury trial of prior conviction allegations. See Cal. Penal Code § 1025; People v. Epps, 25 Cal. 4th 19, 22-25, 104 Cal. Rptr. 2d 572, 574-77, 18 P.3d 2 (2001). However, this statutory jury trial right does not extend to the issue of whether the defendant is the person who suffered the prior conviction (see California Penal Code § 1025(c)). Nor does this statutory jury trial right extend to the issue of whether a prior conviction is a serious felony under California's Three Strikes Law. See People v. McGee, 38 Cal. 4th 682, 693-94, 42 Cal. Rptr. 3d 899, 133 P.3d 1054 (2006), cert. denied, 127 S. Ct. 1123 (2007); People v. Kelii, 21 Cal. 4th 452, 454-57, 87 Cal. Rptr. 2d 674, 981 P.2d 518 (1999). Although a defendant is statutorily entitled to a jury trial to determine whether an alleged prior conviction occurred, official government records documenting an alleged prior conviction, such as a "prison packet" submitted in accordance with California Penal Code section 969b, "presumptively establish that the conviction in fact occurred, assuming those documents meet the threshold requirements of admissibility." See People v. Epps, 25 Cal. 4th at 27 (citation omitted). Hence, as the California Supreme Court recognized in People v. Epps, because "in most cases, there will be no contested factual question for the jury to decide, . . . many defendants may be willing to waive a jury trial when there is no contested factual question for the jury to decide, and in any case, these trials will generally take a few minutes at

1 | most."   _Id._ at 27-28.

2

3        Petitioner waived his right to a jury trial on the prior

4    conviction allegations (R.T. 1323-24).   Following a court trial at

5    which the prosecution introduced Petitioner's prison packet and the

6    defense presented no evidence, the court found true the prior

7    conviction allegations (R.T. 1339).

8

9        Petitioner contends that his jury trial waiver was flawed because

10   it was tendered under California law allegedly unconstitutionally

11   limiting a defendant's jury trial right on prior conviction

12   allegations (Pet. Mem., pp. 12-13).   The Court of Appeal rejected this

13   assertion, ruling that Petitioner had no constitutional right to a

14   jury trial on the prior conviction allegations (Respondent's Lodgment

15   4, pp. 19-20; People v. Berreondo, 2006 WL 710958, at *9).

16

17       In Apprendi v. New Jersey, 530 U.S. 466 (2000) ("Apprendi"), the

18   United States Supreme Court held that, regardless of its label as a

19   "sentencing factor," any fact other than the fact of a prior

20   conviction that increases the penalty for a crime beyond the

21   prescribed statutory maximum among other things must be "proved beyond

22   a reasonable doubt."   Apprendi, 530 U.S. at 490 (emphasis added).   The

23   Apprendi Court cited its earlier decision in Almendarez-Torres v.

24   United States, 523 U.S. 224 (1998) ("Almendarez-Torres").   Apprendi,

25   530 U.S. at 487-90.   In Almendarez-Torres, the Court ruled that an

26   indictment was not defective for failure to charge the fact of a prior

27   conviction used as a sentence enhancement, on the ground that the

28   prior conviction was not an element of the offense.   Almendarez-

28

1 | <u>Torres</u>, 523 U.S. at 238-47.   In cases after <u>Apprendi</u>, the Supreme
2 | Court has reaffirmed the holding in <u>Apprendi</u> that "[o]ther than the
3 | fact of a prior conviction," a jury must decide any fact that
4 | increases punishment beyond the statutory maximum.   <u>See</u> <u>James v.</u>
5 | <u>United States</u>, 127 S. Ct. 1586, 1600 n.8 (2007); <u>Cunningham v.</u>
6 | <u>California</u>, 127 S. Ct. 856, 869 (2007);  <u>Blakely v. Washington</u>, 542
7 | U.S. 296, 301 (2004).

8 |

9 |       Therefore, Petitioner had no constitutional right to a jury trial
10 | on the prior conviction allegations.   <u>See</u> <u>United States v. Martin</u>, 278
11 | F.3d 988, 1006 (9th Cir. 2002) ("<u>Apprendi</u> expressly excludes
12 | recidivism from its scope.   Defendant's criminal history need not be
13 | proved to a jury beyond a reasonable doubt. [citations]."); <u>see also</u>
14 | <u>United States v. Bradshaw</u>, 281 F.3d 278, 294 (1st Cir.), <u>cert. denied</u>,
15 | 537 U.S. 1049 (2002) (argument that <u>Apprendi</u> barred court from
16 | imposing sentence under federal Three Strikes Law, 18 U.S.C. section
17 | 3559(c), based on prior convictions was a "non-starter"); <u>Dahler v.</u>
18 | <u>United States</u>, 259 F.3d 763, 765 (7th Cir. 2001) (under <u>Apprendi</u> and
19 | <u>Almendarez-Torres</u>, "maximum sentences may be enhanced on account of
20 | prior convictions without submitting to the jury any questions about
21 | the number or significance of those convictions").   Because the State
22 | did not violate the Constitution by providing only a limited statutory
23 | jury trial right, Petitioner's unconstitutional waiver claim fails.

24 |

25 |       For the foregoing reasons, the Court of Appeal's rejection of
26 | this claim was not contrary to, or an objectively unreasonable
27 | application of, any clearly established Federal law as determined by
28 | the United States Supreme Court.   <u>See</u> 28 U.S.C. § 2254(d).   Petitioner

1 | is not entitled to habeas relief on Ground Four of the Petition.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying and dismissing the Petition with prejudice.

DATED: March 27, 2008.


_____/S/_____
                CHARLES F. EICK
        UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.